Saul S. Steeit, J.
In this action by James Zolli, the plaintiff husband, against Vilma Zolli, his wife, the complaint states four causes of action without being separately stated and numbered.
In paragraphs Third to Ninth the plaintiff alleges that prior to January 1, 1952, he was the sole owner of approximately $66,000 in cash, consisting of $50,000 contained in 10 savings bank accounts in the form of Totten trusts in his and his wife’s names as trustees, $10,000 in cash contained in a vault at the Chase National Bank to which the defendant had access, and $6,000 in cash kept in a steel box at the home of the parties; that as to the savings accounts in the name of the defendant as trustee she had originally indorsed withdrawal slips in blank, but thereafter wrongfully withdrew the money from said savings accounts, as well as the $10,000 in the vault, and the $6,000 in the steel box. As to the $10,000 in the vault, the complaint has been amended to fix the taking as of 1950.
In paragraphs Tenth to Twelfth, inclusive, the plaintiff alleges that prior to January 1, 1952, he caused the Jay Yee Cab Corp. to be formed to operate cabs in New York City; that he transferred two taxicabs and two medallions owned by him to the corporation, that no stock was ever issued by the corporation, and that the defendant is now operating and using the two cabs and medallions for her own use, and refuses to turn them over to the plaintiff.
*584 In the Fourteenth paragraph the plaintiff demands judgment against the defendant:
(1) to account for
(a) all the moneys taken from the savings banks,
(b) the money taken from the vault,
(c) the money taken from the steel box;
(2) for a declaratory judgment declaring him to be the sole owner of the stock of the Jay Vee Cab Corp. and directing the defendant to turn over to him the books of the corporation;
(3) directing the defendant to account to plaintiff for all collections from the operation of the taxicabs from January 1,1952; and
(4) an injunction against defendant restraining her from disposing of the taxicabs and medallions.
The defendant denies that she ever took any savings bank books or moneys belonging to the plaintiff, or that she illegally operated the taxicabs.
She contends:
(1) that the action is barred by the Statute of Limitations;
(2) that with respect to the request for a declaratory judgment there is an action pending in the Supreme Court between the parties for the same cause;
(3) by way of a first counterclaim she alleges that on April 10, 1941, she and the plaintiff purchased a business known as the Sterling Tire & Accessory Co. and then formed a partnership by the terms of which they were to share the profits and losses equally; that the plaintiff took possession of the business to her exclusion and applied the profits to his own use; and, under a second counterclaim contends that the plaintiff appropriated to his own use $10,000 in a vault in the bank, $2,000 in a cigar box owned by her, and $60,000 in cash contained in a steel box in Summit Hill, Pa., of which she was half owner.
She asks: '
(1) for an affirmative judgment in the sum of $72,000;
(2) for the dissolution of the Sterling Tire & Accessory Co. and a partnership accounting;
(3) for an injunction restraining him from disposing of the business; and
(4) for the appointment of a receiver.
In brief, this inartistic complaint asks for an accounting, for moneys allegedly converted by the defendant, a declaratory judgment as to the ownership of the corporate stock, an accounting for the use of the taxicabs and an injunction.
*585 The amended answer pleads the Statute of Limitations, the pendency of a prior action for the same cause, an affirmative judgment for conversion of cash, a partnership accounting, an injunction, and the appointment of a receiver.
First: As to plaintiff’s claim of misappropriation of the bank 1 looks and cash — ■
a. The defense of the Statute of Limitations. The time of accrual of the action does not appear on the face of the complaint. The evidence, however, does disclose that the alleged taking took place some time in 1952 or prior thereto. Were the acts a simple conversion, or were they a violation of a fiduciary obligation justifying an accounting? “ Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner’s rights.” (Employers’ Fire Ins. Co. v. Cotten, 245 N. Y. 102, 105; Laverty v. Snethen, 68 N. Y. 522.) In my opinion none of the acts with respect to the bankbooks or the cash warrant an action for an accounting. They spell out a simple conversion, whose limitation is governed by subdivision 7 of section 49 of the Civil Practice Act (Guild v. Hopkins, 271 App. Div. 234). It must be commenced within three years. By invoking the jurisdiction of equity, the plaintiff could not be entitled to a greater period (Guild v. Hopkins, supra).
b. The evidence as to conversion. Notwithstanding the statute, however, there is not a scintilla of proof that the defendant took any of his cash, beyond plaintiff’s bold assertion. The six bankbooks in the name of the defendant show that practically all of the money was withdrawn almost two years before he claims the books were taken. There is a record of her visit to the vault in 1950 but this is just as consistent with innocence. The plaintiff has utterly failed to establish any conversion, legal or equitable.
Second: The prayer by the plaintiff for a declaratory judgment as to the ownership of the corporate stock and the defendant’s demand for a partnership accounting are inextricably interwoven and will now be treated together.
a. The partnership. On April 10, 1941 there was a triparty agreement, between a man named Shamamian, who was the owner of the Sterling Tire & Accessory Co., on one side and James Zolli and Vilma Zolli on the other. The plaintiff’s signature on that agreement is clear as crystal, and his denial thereof brands him as one entitled to little credence from this court. I find that in 1941 the plaintiff and defendant entered into an oral partnership at will, to which each contributed an equal share of the assets and under which they were to share the *586 profits and losses equally. I find that profits were so shared until the parties separated in 1952, when the plaintiff wrongfully excluded the defendant from the business. I hold that there was a partnership at will, that the partnership should be dissolved and that the defendant is entitled to an accounting and the appointment of a receiver.
b. The stock of the Jay Yee Cab Corp. During the year 1948, in order to circumvent a city ordinance and police department regulation prohibiting individual taxi owners from becoming fleet owners, the plaintiff and the defendant formed the Jay Yee Cab Corp. They both knew of the regulation and both participated in the formation of the corporation. They were participes criminis. Two taxicabs and medallions originally purchased with Sterling Tire & Accessory Co. funds in the name of the plaintiff, were transferred to the corporation. Notwithstanding this regulation, each with the knowledge and approval of the other, continued to own and operate an additional taxicab in their individual names.
I find that the two taxicabs and medallions transferred to the corporation in 1948 were partnership assets and that when the Jay Yee Cab Corp. was formed each was entitled to 50% of the stock of that corporation.
No stock was ever issued and there was never a formal meeting of the stockholders.
However, in 1948, an informal resolution was adopted designating the plaintiff as president of the corporation and the defendant as secretary and treasurer, with both having the right to sign checks.
In 1950, for the convenience of the plaintiff, another informal resolution was adopted appointing the plaintiff president and one Dominick Amato secretary-treasurer.
In 1954 the defendant says she adopted the plaintiff’s suggestion and dropped Amato as an officer.
I find that in October of 1952 the plaintiff consented or acquiesced in the defendant’s use and operation of one of the corporation’s medallions and taxis for her personal use.
I find that in April of 1955 the defendant obtained a second corporate medallion and has used it for her personal benefit without the plaintiff’s consent.
The defendant testified that in July of 1955 the plaintiff told her that she could have the two cabs; and at another time “ that she could have the two cabs if she consented to a divorce.” The plaintiff denied these statements.
The defendant has also produced two affidavits signed by the plaintiff in 1953 and 1954 at the times that he made application *587 for renewals of the license for his individually owned cab. There he swore that he had no interest in any other firm or corporation owning taxicabs. This false statement as I have indicated, was made to avoid the restriction against individual owners becoming fleet owners.
The plaintiff denied that he signed these affidavits, but I have compared his signatures with those on the checks, and I am fully satisfied that the plaintiff is again tampering with the truth. The signatures on the said affidavits are clearly the plaintiff’s.
I hold that regardless of any offense that the plaintiff may have committed before the license bureau, these affidavits plus the statements attributed to the plaintiff by the wife concerning her title to the cabs, buttressed by a rather biased child, are insufficient to divest the plaintiff of his stock interest in the corporation. All this at a time when they were at sword’s point and an action for divorce pending.
I find that there are now two taxicabs and two medallions in the name of the Jay Vec Cab Corporation. The two medallions are those which had been purchased by partnership funds and transferred to the corporation. The two taxicabs now in the name of the corporation were purchased by the defendant with her own funds. She no doubt has a claim for the money so advanced. But the application before me is for a declaratory judgment as to the ownership of the stock of the corporation. I, therefore, hold that each of the parties is entitled to 50% of the corporate stock.
The corporation is not a party to this lawsuit; hence no direction will be made to it. Nor will the court direct any accounting by the defendant to the plaintiff concerning the use of the two corporate medallions or the operation of the corporate taxicabs. That is a corporate matter.
The request for an injunction to restrain the defendant must also be denied because that requires a stockholders’ action wherein the corporation must be a party.
Third: We now come to the defendant’s counterclaim for $72,-000. The story she has unfolded concerning the cash in the cigar box upstairs, the cash in the candy box downstairs, the cash in a steel box in Summit Hill, Pennsylvania, no doubt has some element of truth. For both these parties were certainly playing fast and loose with the cash that came into the Sterling Tire & Accessory Company. But, in the final analysis, all we have here is the oral, fantastic charge by the defendant and an estranged daughter that $69,400 in cash was placed in a steel box, carted to Summit Hill, Pennsylvania, and there placed under the bed in plaintiff’s sister’s bedroom, then to his father’s attic and then *588 back to the sister’s bedroom. There is also a book in evidence showing some record of loans made by the plaintiff, bnt this is no proof that plaintiff had such an amount of cash — or that it came from the partnership business. The admitted fact is that both parties filed joint tax returns for many years which showed a net aggregate profit over the years of less than 10% of the amount sued for by this defendant.
The story is tainted with much imagination and exaggeration, lacks proof and practicality and taxes credulity. There would have to be much more than the bitter oral testimony of divided spouses and a biased child for the court to find that there was that much cash, and that it came from the partnership funds.
The defendant’s claim for the conversion of cash from the cigar box, the candy box, and the steel box must fall.
The judgment of the court is:
1. The plaintiff’s claim for an accounting or for conversion of the bankbooks or the proceeds of the bankbooks, and for cash from a steel box and cash from the vault is dismissed.
2. That each of the parties is entitled to 50% of the stock of the Jay Vee Cab Corporation.
3. The application that the defendant turn over to the plaintiff the corporate seal and books of the corporation is denied. The books will be returned to the attorney who brought them here, Mr. Arnold Bloch.
4. The application that the defendant account to the plaintiff for collections from the operation of the corporate taxicabs is denied.
5. The application to restrain the defendant is denied.
6. (a) That the plaintiff and the defendant were partners at will of the Sterling Tire & Accessory Company from April 10, 1941;
(b) That such partnership is now dissolved;
(c) That defendant is entitled to an accounting of the acts and proceedings of the Sterling Tire & Accessory Company and of the assets and liabilities of said business from July 1, 1952, and
(d) Martin Tucker, Esq., is hereby appointed receiver of the Sterling Tire & Accessory Company upon the furnishing of a bond in the sum of $5,000, with power to wind up the partnership business and to sell the assets thereof at public sale.
(e) The plaintiff is hereby enjoined from disposing of the assets of said business.
7. The defendant’s claim for the conversion of cash is dismissed.
*589 8. The matter of the taking and stating of the said account is referred to Honorable Carroll Gr. Walter, Official Referee.
This constitutes the judgment of the court, under section 440 of the Civil Practice Act.